UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM V. AGUIAR III, an individual<br><br>    Plaintiff,<br><br>v.<br><br>FLOYD WEBB, an individual, et. al.<br><br><br>    Defendants. | CIVIL ACTION NO.<br> 07-11673-MLW |

## **ANSWER, COUNTERCLAIM, AND JURY DEMAND**

Defendant Floyd Webb (hereinafter "Webb") by and through his attorneys, for his Answer to the Complaint filed by William V. Aguiar, III (hereinafter "Plaintiff") states as follows:

## **ANSWER**

1.      On information and belief, Plaintiff is a resident of Fall River, Massachusetts. Except as stated herein, Mr. Webb is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph One of the Complaint and therefore denies the same.

2.      Paragraph Two of the Complaint contains no allegations and therefore no response is required.

3.      Mr. Webb is a resident of Chicago, Illinois and is a partner of 3 to 1 Studios LLC and President of e22 Digital Productions, Inc.  Except as stated herein, Mr. Webb is

1

without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph Three of the Complaint and therefore denies the same.

4.      On information and belief, Mr. Webb denies that Plaintiff is the owner of the copyrights and trademarks alleged in Paragraph Four of the Complaint. Mr. Webb is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph Four and therefore denies the same.

5.      On information and belief, Mr. Webb denies the allegations of Paragraph Five of the Complaint.

6.      Plaintiff's allegations in Paragraph Seven of the Complaint do not specify the copyrighted materials owned by Plaintiff that he alleges have been infringed and do not specify any work by Mr. Webb that allegedly infringe Plaintiff's copyrights. Mr. Webb nevertheless denies that any of his works infringe any of Plaintiff's copyrights. Mr. Webb further denies that he has caused Plaintiff any damages.

7.      Paragraph Eight of the Complaint contains no allegations and therefore no response is required.

8.      All allegations of the Complaint not specifically admitted or denied above are hereby denied.

## AFFIRMATIVE DEFENSES

As separate and affirmative defenses, Mr. Webb states as follows:

### FIRST

9.      The Complaint fails to state facts sufficient to constitute a cause of action against Mr. Webb.

**SECOND**

10.     The Complaint fails to state a claim for which relief can be granted against Mr. Webb.

**THIRD**

11.     The Complaint fails for lack of personal jurisdiction over Mr. Webb.

**FOURTH**

12.     This Complaint is barred in whole or part under principles of equity, including laches, waiver and/or estoppel.

**FIFTH**

13.     Plaintiff comes to this court with unclean hands and should therefore be barred from recovering the relief requested or any relief from Mr. Webb.

**SIXTH**

14.     Defendant Webb's actions were innocent and non-willful.

**SEVENTH**

15.     Defendant has not reaped any profits attributable to any alleged infringement(s).

**EIGHTH**

16.     Any use by Defendant of any copyrighted work claimed by Plaintiff was de minimus, and constituted fair use pursuant to 17 U.S.C. § 107.

## COUNTERCLAIM

### Nature of the Counterclaim

17.     This Counterclaim arises out of the allegations that are the subject matter of Aguiar's Complaint.  Mr. Webb seeks injunctive relief and damages for Plaintiff's misrepresentation of copyright under the Digital Millennium Copyright Act ("DMCA"); and for declaratory judgment that Webb's use of certain images and logos in the trailer for his upcoming documentary film *The Search for Count Dante* (the "Trailer") and on Webb's website promoting the film, www.thesearchforcountdante.com (the "Website"), does not constitute infringement of any copyrights or trademarks that Plaintiff is authorized to assert against Webb.

18.     This Counterclaim arises out of Plaintiff's baseless assertions that Webb's Trailer infringes copyrights and trademarks owned or controlled by Plaintiff.  These allegations have resulted in serious and immediate injury to Mr. Webb, the removal of Webb's video from the popular Internet media website, YouTube, and in the suspension of the Website.  In addition, Plaintiff's assertions have hampered Mr. Webb's ability to secure the funding for, and complete, his full-length film.

### Parties

19.     Defendant Floyd Webb is a documentary filmmaker who resides in Chicago, Illinois.  He has produced a variety of documentary and other films, videos and digital media, and he has lectured on African American Cinema History at the School of the Art Institute of Chicago and on Convergence and New Media at the London School of Printing and the Institute of Contemporary Art.

20.     On information and belief, Plaintiff William V. Aguiar III is a resident of Fall River, Massachusetts.

## Jurisdiction and Venue

21.     This Court has subject matter jurisdiction over Defendant's Federal counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121.

22.     This Court also has subject matter jurisdiction over Defendant's counterclaims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the statutory minimum and Plaintiff is diverse with Defendant Webb.

23.     Upon information and belief, Plaintiff is a resident of Massachusetts, or otherwise has sufficient contacts with this district that he is subject to the exercise of jurisdiction of this court.

24.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because (a) the acts of misrepresentation, copyright misuse and other wrongful conduct alleged herein occurred in the Commonwealth of Massachusetts and (b) Plaintiff may be found in the Commonwealth of Massachusetts.

## Factual Allegations

25.     Webb is creating a documentary film entitled, *The Search for Count Dante*. The film explores the life of John Keehan, a martial arts expert who changed his name in the 1960s to Count Juan Raphael Dante. Count Dante is a famous and controversial figure, and both during his lifetime and after his death he has been the subject of news and feature stories in the media. Among other things, Count Dante was the self-proclaimed "Deadliest Man Alive" and "Crown Prince of Death," co-founded the United States Karate Association (USKA), and founded an organization he called the

5

Black Dragon Fighting Society, an American martial arts organization. Keehan is also notable because he was one of the first American karate masters to accept African-American and Hispanic students.

26. Count Dante's story includes significant intrigue: He allegedly paid a visit to Muhammad Ali's home to challenge him to a boxing match, participated in the attack of a rival dojo that left one of his colleagues dead, and is suspected of being the mastermind behind the Purolator Vault robbery, one of the most infamous heists in Chicago's history.

27. Through his interviews with an array of characters, including karate champions, mob informants and tai chi masters, Webb tells Count Dante's story, set against the backdrop of social change during the 1960s and '70s and the emergence of martial arts in American popular consciousness.

28. Although the full-length film is a work in progress, Webb has created the Trailer, a one and a half minute long promotional preview of the full length film to attract support and an interest for his film, financial and otherwise.

29. In the fall of 2006, Webb uploaded the Trailer onto the Website, www.thesearchforcountdante.com. In addition to watching the Trailer, visitors to the Website can view interviews of people in the film, learn more about Count Dante's life, record video testimonials of their experience with Count Dante's book, read Webb's biography and view his notes and video clips of the making of the film. In addition, visitors are invited to make monetary donations to support the film.

30. Plaintiff William V. Aguiar III, the self-proclaimed "Grand Master" of the Black Dragon Fighting Society ("BDFS"), claims that he owns copyright registration

6

number A86679, and other unspecified copyrights and trademarks in the materials recounted in paragraph 5 of the Complaint; Count Dante Fighting Systems; The Black Dragon Fighting Society; The World's Deadliest Fighting Secrets; and The Count Dante's logos (the "Disputed Materials"). Aguiar claims Webb's use of Count Dante and BDFS images and logos in the Trailer and on the Website without permission, grant, or license is an infringement of Aguiar's copyright and trademarks.

Plaintiff's Assertions to YouTube

31. In or about January 2007, Webb uploaded the Trailer to a popular website on the Internet known as "YouTube" (www.youtube.com), using his account named archanjo88. YouTube is a video-sharing site where millions of Internet users post videos and make them available to others for viewing. These videos range from traditional home videos of personal events, to news reports, to advertisements and television programs.

32. Webb is informed and believes, and thereon alleges, that Plaintiff Aguiar or his representative, delivered one or more takedown notices to YouTube pursuant to the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(c), asserting under penalty of perjury that the Trailer infringes copyrights and trademarks owned or controlled by Aguiar and/or BDFS.

33. Acting pursuant to the takedown notice (or notices) delivered by, or caused to be delivered by Aguiar, YouTube blocked all public access to the Trailer, substituting on the webpage (http://www.youtube.com/watch?v=6JKpnurQQ24) a notice stating that the video was no longer available. On or about June 20, 2007, Webb received an email from YouTube notifying him that YouTube had blocked the webpage "as a

result of a third-party notification by Black Dragon Fighting Society/Count Dante Fighting System claiming that this material is infringing."

34.     In response to Plaintiff's takedown notice, pursuant to 17 U.S.C. § 512(g)(3), Webb sent YouTube a counter notification on July 23, 2007. Upon receiving Webb's counter notification, YouTube restored access to the Trailer on the YouTube website.

Plaintiff's Assertions to The Planet

35.     Webb is informed and believes, and thereon alleges, that on or about June 26, 2007, Plaintiff's attorney delivered a cease and desist letter to Network Solutions, the registrar for Webb's domain name (thesearchforcountdante.com), which included a notarized affidavit of Plaintiff Aguiar swearing that the Website infringes copyrights and trademarks owned or controlled by Aguiar and/or BDFS.

36.     Webb is informed and believes, and thereon alleges, that on or about July 10, 2007, Plaintiff's attorney delivered a cease and desist letter to The Planet, the company that hosts Webb's Website (www.thesearchforcountdante.com), which included a notarized affidavit of Plaintiff Aguiar swearing that the Website infringes copyrights and trademarks owned or controlled by Aguiar and/or BDFS.

37.     In response to Plaintiff's cease and desist letter, The Planet instructed its web hosting company, HostGator, to disable the Website, blocking all public access to the Trailer and all other material on the Website, as well as denying Webb access to files he uploaded and maintained on the Website, preventing him from remotely working with his collaborators on the film, and disabling his email account.

38.     Upon discovering that his Website had been disabled, Webb complained to HostGator's support department and explained that his Website did not infringe Plaintiff's copyrights or trademarks.

39.     After HostGator's support personnel investigated the issue, they sent an email to Webb stating that his account and Website had been reactivated because their investigation revealed that the Fair Use Doctrine clearly protected Webb's use of the Disputed Materials.  Access to Webb's Website was immediately restored.

40.     Although The Planet restored access to the Website, it continued to demand a formal response from Webb to Plaintiff's cease and desist letter.  Webb complied with these requests and provided The Planet with a written counter notification in response to Plaintiff's cease and desist letter.

## FIRST CAUSE OF ACTION

*Copyright Misrepresentation [17 U.S.C. § 512(f)]*

41.     Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Document.

42.     On information and belief, Plaintiff does not own the copyrights claimed in the Disputed Materials.

43.     Upon information and belief, Webb's use in the Trailer and on the Website of copyrighted images and logos related to Count Dante and Black Dragon Fighting Society is a self-evident fair use and therefore non-infringing under 17 U.S.C. § 107.

44.     Upon information and belief, Plaintiff knew or should have known that the Trailer and the Website did not infringe any of the copyrights Plaintiff owned on the date

9

his representative sent Plaintiff's DMCA takedown notice to YouTube and the cease and desist letters to Network Solutions and The Planet.

45. Accordingly, Plaintiff violated 17 U.S.C. § 512(f) by knowingly and materially misrepresenting that the Trailer and the Website infringe his copyrights.

46. As a direct and proximate result of Plaintiff's actions, Webb has been injured substantially and irreparably. Such injuries include, but are not limited to, harm to Webb's free speech rights under the First Amendment, and the expenses associated with responding to Plaintiff's complaints and vindicating his free speech rights.

## SECOND CAUSE OF ACTION

*Declaratory Judgment*

*Non-Infringement [17 U.S.C. §§ 101, et seq.]*

47. Defendant repeats and incorporates herein by reference the allegations in the preceding paragraphs of this document.

48. There is a real and actual controversy between Webb and Plaintiff regarding whether the material in the Trailer and on the Website infringes any copyright held or administered by Plaintiff Aguiar.

49. Absent a resolution of this matter, Webb will be uncertain as to whether his actions expose him to liability.

50. Webb has no other prompt and expeditious remedy to protect his interests.

51. Material in the Trailer or on the Website that does not use any work whose copyright is held or administered by Plaintiff does not infringe any of Plaintiff's copyrights.

52.     Webb is entitled to a declaratory judgment that the Trailer and the Website do not infringe any copyright of Plaintiff.

## THIRD CAUSE OF ACTION

*Declaratory Judgment*

*Copyright Fair Use [17 U.S.C. § 107]*

53.     Defendant repeats and incorporates herein by reference the allegations in the preceding paragraphs of this document.

54.     There is a real and actual controversy between Webb and Plaintiff as to whether Webb's use of materials in the Trailer and on the Website to which Plaintiff holds or administers copyright falls within the fair use privilege.

55.     Absent a resolution of this matter, Webb will be uncertain as to whether his actions expose him to liability.

56.     Webb has no other prompt and expeditious remedy to protect his interests.

57.     Webb contends that, consistent with the Copyright Act of the United States of America, including those laws prohibiting direct, contributory or vicarious infringement, laws protecting fair use and the First Amendment to the United States Constitution, and judicial decisions construing such laws, doctrines, and provisions, the creation and posting of the Trailer and the Website by Webb was and is lawful and non-infringing.

58.     Material in the Trailer and on the Website that does not use any work whose copyright is held by or administered by Plaintiff does not infringe any of Plaintiff's copyrights.

59. Webb's use of the Disputed Materials in the Trailer and on the Website is for the purposes of cultural critique, biographical illustration, criticism, and commentary.

60. Webb's use of the Disputed Materials in the Trailer and on the Website is not substantially commercial.

61. Webb's use of the Disputed Materials in the Trailer and on the Website is of reasonable length to accomplish his goals of cultural critique.

62. Webb's use of the Disputed Materials in the Trailer and on the Website establishes or illustrates historical facts that are relevant and critical to Webb's work.

63. Webb's use of the Disputed Materials in the Trailer and on the Website is transformative because Webb alters the Disputed Materials with new expression, meaning, or message.

64. Webb's use of the Disputed Materials in the Trailer and on the Website has little to no effect on the potential market for or value of the Disputed Materials.

65. Due to the purpose and nature of Webb's work, his use of the Disputed Materials in the Trailer and on the Website is protected by the Fair Use Doctrine.

66. Wherefore, Webb is entitled to declaration that each and every one of the above-stated propositions states the law applicable to the facts involved in this action.

## FOURTH CAUSE OF ACTION

*Declaratory Judgment*

*Copyright Misuse*

67.     Defendant repeats and incorporates herein by reference the allegations in the preceding paragraphs of this document.

68.     Upon information and belief, Plaintiff is using threats of copyright infringement to unlawfully secure an exclusive right or limited monopoly not granted by the copyright laws.

69.     Upon information and belief, Plaintiff knew or should have known that Webb's use of the Disputed Materials in the Trailer and on the Website constitutes a fair use of copyrighted material under 17 U.S.C. §§ 107 *et seq.*, or are otherwise noninfringing.

70.     Plaintiff engaged in the misuse of his copyrights, including in the letters he sent to YouTube, The Planet, and Network Solutions, by claiming that Webb's work constituted copyright infringement when Plaintiff knew or should have known that it did not.

71.     Upon information and belief, Plaintiff's demand that Webb not use Count Dante's works, along with uncopyrighted information contained in those works, was an effort to secure an exclusive right or limited monopoly not granted by the copyright laws.

72.     Upon information and belief, Plaintiff is using threats of copyright infringement to restrain Webb's free speech and artistic expression in order to illegally extend the scope of Plaintiff's copyright.

73.     Upon information and belief, Plaintiff engaged in misuse of his copyrights when they sought to use legal threats against Webb to prevent criticism and commentary on Count Dante and the Black Dragon Fighting Society.

74.     Plaintiff's misuse of his copyrights violates the public policies underlying the copyright laws.

75.     Webb is entitled to a declaratory judgment that Plaintiff's copyright misuse prohibits copyright enforcement by Plaintiff against Webb.

## FIFTH CAUSE OF ACTION

*Declaratory Judgment*

*Lanham Act*

76.     Defendant Webb repeats and incorporates herein by reference the allegations in the preceding paragraphs of this document.

77.     There is a real and actual controversy between Webb and Plaintiff regarding whether the Trailer and the Website constitute infringement of a trademark Plaintiff lawfully owns.

78.     Absent a resolution of this matter, Webb will be uncertain as to whether his actions expose him to liability.

79.     Webb has no other prompt and expeditious remedy to protect his interests.

80.     Upon information and belief, Plaintiff does not own the trademarks claimed in the Disputed Materials, or the trademarks claimed in the Disputed Materials are not protectable under the Lanham Act.

81.     Webb's use of the Disputed Material in the Trailer or on the Website is not likely to cause confusion as to the origin of any goods or services.

82.     Webb's use of any trademarks among the Disputed Material in the Trailer and on the Website is not commercial.

83.     Webb is entitled to a declaratory judgment that his actions do not constitute infringement of Plaintiff's trademarks.

## SIXTH CAUSE OF ACTION

*Declaratory Judgment*

*Trademark Fair Use [15 U.S.C. § 1115]*

84.     Defendant Webb repeats and incorporates herein by reference the allegations in the preceding paragraphs of this document.

85.     There is a real and actual controversy between Webb and Plaintiff as to whether Webb's use of materials in the Trailer and on the Website, to which Plaintiff holds or administers any trademarks, falls within the fair use privilege.

86.     Absent a resolution of this matter, Webb will be uncertain as to whether his actions expose him to liability.

87.     Webb has no other prompt and expeditious remedy to protect his interests.

88.     Webb's use of any trademarks among Disputed Material in the Trailer and on the Website is not commercial.

89.     Webb's use of the Disputed Materials in the Trailer and on the Website is in good faith.

90.     Webb's use of the Disputed Materials in the Trailer and on the Website is for purposes of comment and criticism.

91.     Webb's use of the Disputed Materials in the Trailer and on the Website is nominative and is used to identify and describe the subject matter of the documentary.

92.     Webb's use of the Disputed Materials in the Trailer and on the Website neither implicates the source identification function of any disputed trademark nor does it imply sponsorship or endorsement by the trademark holder.

93.     Webb's use of the Disputed Materials in the Trailer and on the Website is a fair use and he is entitled to a declaratory judgment that his actions do not constitute infringement of Plaintiff's trademarks.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant Webb prays for judgment as follows:

1.      An order that Plaintiff take nothing by its Complaint;

2.      An order dismissing Plaintiff's Complaint with prejudice;

3.      Finding that Plaintiff has engaged in copyright misrepresentation in violation of 17 U.S.C. § 512(f);

4.      Damages, including costs and attorneys' fees according to 17 U.S.C. § 512(f);

5.      Declaring that the Plaintiff does not own the copyrights asserted;

6.      Declaring that the Trailer does not infringe any copyright that Plaintiff lawfully owns;

7.      Declaring that the Website does not infringe any copyright that Plaintiff lawfully owns;

8.      Declaring that Webb's work is protected by the Fair Use doctrine, 17 U.S.C. § 107;

9.      Declaring that the Trailer does not infringe any trademark that Plaintiff lawfully owns;

10.        Declaring that the Website does not infringe any trademark that Plaintiff lawfully owns;

11.        Declaring that Webb's transformative work is trademark fair use;

12.        Permanently enjoining the Plaintiff, his agents, servants, employees, successors and assigns, and all others in concert and privity therewith, from bringing any copyright or trademark lawsuit, threatening legal action in regards to such a lawsuit, or delivering DMCA takedown allegations in connection with the Trailer or the Website, including but not limited to its publication, distribution, performance, display, licensing, or the posting to or linking from any website;

13.        Permanently enjoining Plaintiff, his agents, servants, employees, successors and assigns, and all others in concert and privity therewith, from asserting any copyrights or trademarks he does not lawfully own;

14.        Attorneys' fees pursuant to the Copyright Act, including Section 505, on a Private Attorney General basis, or otherwise as allowed by law;

15.        Defendant Webb's costs and disbursements; and

16.        Such other and further relief as the Court shall find just and proper.

**JURY DEMAND**

Defendant Webb hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: October 9, 2007
Stanford, California

                Respectfully submitted,

                FLOYD WEBB,

                By his attorneys,

                /s/ Brandy A. Karl
                Brandy A. Karl (BBO #661441)
                Lawrence Lessig (*pro hac vice* admission pending)
                Anthony Falzone (*pro hac vice* admission pending)
                Julie Ahrens (*pro hac vice* admission pending)
                Center for Internet and Society
                Stanford Law School
                559 Nathan Abbott Way
                Stanford, CA 94305-8610
                bkarl@stanford.edu
                Tel:  (650) 724-0517

and              Michael Boudett (BBO # 558757)
                David Kluft (BBO # 658970)
                Walead Esmail (BBO # 666347)
                Foley Hoag LLP
                155 Seaport Boulevard
                Boston, MA 02210

                *Attorneys for Defendant Floyd Webb*

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and a paper copy was sent to those indicated as non registered participants on October 9, 2007.

                                               /s/ Brandy A. Karl
                                               Brandy A. Karl