UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM V. AGUIAR, III,<br><br>        Plaintiff,<br><br>v.<br><br>FLOYD WEBB, BARRON SHEPPARD,<br>WENDY SHEPPARD and ASHIDO KIM<br>a/k/a CHRISTOPHER HUNTER and<br>a/k/a BRADFORD DAVIS,<br><br>        Defendants. | Civil Action No. 07-CA-11673-MLW |

**DEFENDANT FLOYD WEBB'S
MOTION FOR DEFAULT JUDGMENT AND DISMISSAL
or in the alternative MOTION FOR JUDGMENT ON THE PLEADINGS
or in the alternative MOTION FOR SANCTIONS**

Defendant and counter-claim Plaintiff Floyd Webb moves for entry of default judgment and dismissal pursuant to Fed. R. Civ. P. 55, or in the alternative for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), or in the alternative for sanctions, against Plaintiff and counterclaim defendant William V. Aguiar III. Although Mr. Aguiar has been ordered by this Court on more than one occasion, verbally and in writing, to file on time an amended complaint and to answer Webb's counterclaims, he has ignored every deadline set by the rules and by this Court, and although over two weeks late he filed a document called "answer," he has still failed to respond to Mr. Webb's factual allegations and counterclaims. Judgment on the Pleadings and Default Judgment in favor of Webb are both appropriate remedies. Mr. Aguiar does not have meritorious defenses to Mr. Webb's counterclaims, and in addition, the pendency of Mr. Aguiar's prolonged and futile efforts to properly initiate and prosecute this action has prejudiced the exercise of Mr. Webb's free speech rights, depriving him opportunities for exhibition and funding of his documentary film. The present delay also continues to expose Mr. Webb to

harassment, intimidation and even death threats, issued in connection with Mr. Webb's appearances in Court, by persons associated with Mr. Aguiar and on whose behalf Mr. Aguiar has purported to act.

## Background

On or about September 7, 2007, Plaintiff Mr. Aguiar filed a murky and scatter-shot *pro se* complaint alleging copyright infringement against a variety of defendants. (Ex. A).[1] Shortly thereafter he moved for a preliminary injunction. (Ex. B). In the name of protecting what he regards as his copyright in a book entitled "World's Deadliest Fighting Secrets," Mr. Aguiar is seeking to prevent Mr. Webb from completing and exhibiting a documentary film about the legendary martial artist Count Dante. (Ex. A, Ex. B). Mr. Aguiar's papers and in-court statements indicate that he also seeks to protect or enforce the alleged copyrights of his friend John Creeden III (Mr. Creeden) and Mr. Creeden's father, John Creeden, Jr., who Mr. Aguiar has claimed are or may be the rightful owners of a piece of film footage allegedly infringed by the defendants. (E.g., Ex. C, Ex. D). Finally, Mr. Aguiar's papers have consistently complained about the use of a series of logos and trade names, even though Mr. Aguiar has on several occasions denied that he intends to bring a trademark-based claim, and even though nothing has been presented which purports to address the copyright ownership, or any other type of ownership, of the logos or trade names in question (E.g., Ex. A, Ex. B, Ex. C).

On October 9, 2007, Defendant Floyd Webb filed a timely answer and counterclaims against Mr. Aguiar. The counterclaims included counts for Copyright Misrepresentation (Count I), Declaratory Judgment of Non-Infringement of Copyright (Count II), Declaratory Judgment of Copyright Fair Use (Count III), Copyright Misuse (Count IV), Declaratory Judgment of Non-

---

[1] Affidavits referenced herein are those attached to the Affidavit of David A. Kluft.

Infringement of Trademark (Count V) and Declaratory Judgment of Trademark Fair Use (Count VI). As the docket for this matter demonstrates, Mr. Aguiar did not respond to Mr. Webb's counterclaims within the time period prescribed by the Federal Rules of Civil Procedure.

At a hearing on February 15, 2008, Mr. Aguiar came to Court unprepared and requested a continuance so that he could secure legal representation. The Court denied the continuance, and refused to issue a preliminary injunction against Webb, in part because Aguiar was unlikely to succeed on his infringement claims and Webb was likely to succeed on his fair use defense. (Ex. E). In light of the confused nature of the complaint, the Court also ordered Mr. Aguiar to file an amended complaint by March 14, 2008, "clearly stating the factual and legal bases for each of his claims." (Ex. E). The Court scheduled a conference for March 6, 2008 and gave Mr. Aguiar until February 29, 2008 to either cause counsel to appear on his behalf or file a statement that he intended to continue *pro se*. (Ex. E).[2]

Mr. Aguiar did not meet the Court's deadline. Although the due date was Friday, February 29, 2008, the docket reflects that Mr. Aguiar did not file a statement announcing his continued *pro se* status until early the following week, on March 4, 2008. At the conference on March 6, 2008, the Court noted Mr. Aguiar's failure to meet the recent deadline and warned him of the potential consequences of missing deadlines in the future, including dismissal and sanctions. The Court furthermore encouraged Mr. Aguiar in what he represented to be his ongoing search for legal representation. At the March 6 conference, the Court extended the deadline for filing an amended complaint until March 21, 2008, scheduled a third conference for May 9, 2008, and explicitly reminded Mr. Aguiar of his further obligation to respond to Mr.

---

[2] The Court also granted the other defendants' motions to dismiss. (Ex. E).

Webb's counterclaims at the same time.[3]

Two additional facts about the March 6, 2008 conference are relevant. First, Mr. Aguiar was accompanied to court that day by a gentleman who introduced himself to Mr. Webb's counsel as only "Ray." (Affidavit of David A. Kluft ("Kluft Aff.") at ¶ 4). Second, during the conference in chambers, the Court and Mr. Webb's counsel discussed the extent to which "state of mind" was relevant to a fair use defense. (Kluft Aff. at ¶ 4).

Once again, Mr. Aguiar missed the deadline imposed by the Court. Instead of filing an amended complaint on Friday, March 21, 2008, the docket reflects that he filed it the following week, on March 24, 2008. More egregiously, instead of filing an answer by the deadline March 21, 2008, Mr. Aguiar filed a document called "Answer Counterclaim, and Jury Demand" on April 7, 2008, over two weeks after the deadline imposed by the court and over five months after the original deadline for responsive pleadings imposed by the Federal Rules. (Ex. N).

Importantly, Mr. Aguiar's "answer" fails to answer in any way a single factual allegation of Mr. Webb's counterclaims, and fails to refute the elements of the counterclaims themselves. Instead, Mr. Aguiar appears to have simply copied nearly word for word (with the names of plaintiff and defendant reversed) Mr. Webb's answer and affirmative defenses *to Mr. Aguiar's complaint*. The "answer" makes no response whatsoever to Mr. Webb's factual allegations, skipping over that section of the counterclaims entirely. Finally, Mr. Aguiar lists a series of six "causes of action" for declaratory relief, which does not respond or correspondence to Mr. Webb's counterclaim counts, but instead repeats over and over what appears to be a request for a declaratory judgment of copyright infringement. With this inadequate and late pleading, Mr. Aguiar has also once again hampered the Court's ability to conduct a meaningful scheduling

---

[3] Mr. Webb also reminded Mr. Aguiar in writing of this obligation to file a responsive pleading,

(Footnote Continued on Next Page.)

conference on May 9, 2008, leaving open the likelihood that Mr. Aguiar will request yet further extensions which, if granted, will lead to yet further delays.

While Mr. Aguiar continues to prolong the present proceedings by his apparent inability to follow simple instructions, Mr. Webb continues to miss opportunities for promotion, exhibition and fundraising for his film that would otherwise have been available if not for the pendency of this action. (Affidavit of Floyd Webb ("Webb Aff.")). Distributors and funders are reluctant to get involved with a film while a lawsuit, however frivolous, hangs over it. At least one distributor and funder, a production company affiliated with the BBC, has explicitly told Mr. Webb that it is interested in funding and co-producing the film, but that it will not get involved while the lawsuit is ongoing. (Webb Aff. at ¶ 3). This lawsuit is also chilling Mr. Webb's placement of the film in festivals and other exhibition venues. (Webb Aff. at ¶ 4).

In addition, the very existence of this action is being used as a vehicle to harass, threaten and intimidate Mr. Webb from making his film. After the March 6, 2008 conference, Mr. Aguiar, "over beers," reported the events that took place in chambers to John Creeden III. (Ex. G). Immediately thereafter, Creeden began to use that information to harass and threaten Mr. Webb on the Internet. Mr. Creeden reported the Court's inquiry as to the "state of mind" issue as a judicial statement that Mr. Webb was mentally ill, or not "mentally capable of making decision's pertaining to the case." [sic]. (Ex. G, Ex. H). While the suit has been ongoing, Mr. Creeden has also been harassing others because of their involvement with the film. (Webb Aff. at ¶¶ 5-6). Furthermore, Mr. Creeden has announced that "Ray," the man who accompanied Mr. Webb to court, was a representative of organized criminal interests connected to Mr. Aguiar's late father, who intended to execute Mr. Webb in order to prevent him from finishing his film.

---

(Footnote Continued from Previous Page.)

by way of a Statement of Counsel filed March 5, 2008.

(Ex. G, Ex. I, Ex. J). Creeden explained that "their are people out their that don't want the film to be made" [sic], that Mr. Webb should "get a vest and a shotgun because you steered up a hornests nest" [sic], and that Mr. Webb was "gonna end up in a split level coffin." (Ex. G, Ex. I, Ex. J).[4]

Mr. Creeden's connection to Mr. Aguiar and the present suit is more than speculative. Not only does Mr. Aguiar purport to sue in part on Creeden's behalf, but Mr. Creeden's knowledge of discussions in chambers confirms his representation that Mr. Aguiar reports to him about the case. Additionally, statements on Creeden's blog have been repeated by Aguiar in Court filings,[5] and Creeden has posted on-line non-public documents pertaining to the case. For example, Mr. Creeden recently published on the Internet a letter sent by Mr. Webb's counsel to Mr. Aguiar's probate attorney. (Ex. L).[6] Creeden is at the very least a confidante of Mr. Aguiar and more likely a thinly-concealed shadow partner in his efforts to use these Court proceedings and any other means to stop Mr. Webb from making his film.

---

[4] Irrespective of whether Mr. Creeden's threats are credible, Mr. Webb's counsel feels obliged to bring them to the attention of the Court. These are not the first threats of physical violence that Mr. Creeden has made against Mr. Webb on Mr. Aguiar's behalf, (E.g., Ex. M; see also Declaration of Floyd Webb in Opposition to Motion for Preliminary Injunction at ¶¶ 48-49, filed October 12, 2007), but they are the first of which counsel is aware that are directly connected to proceedings before this Court.

[5] For instance, on March 23, Mr. Creeden, apparently confusing copyright and trademark law, stated that "'consumer confussion' [is] the only defense against 'Fair Use'". [sic]. (Ex. I). The next day, Mr. Aguiar filed a document with this Court entitled "Factual Issues" which made a nearly identical argument. (Ex. K).

[6] Although Mr. Creeden claims in his blog entry that he obtained this letter through some *ex-parte* communication with the Register of Probate, the face of the document he posted indicates otherwise. The letter contains a checkmark on the CC line next to the name of Mr. Aguiar's probate attorney, John P. Francouer, Esq. The check mark was added by Mr. Webb's counsel to indicate that this was the copy sent to Mr. Francouer. (Kluft Aff. at ¶ 5; Ex. L).

(Footnote Continued on Next Page.)

## Argument

Default judgment pursuant to Fed. R. Civ. P. 55 is appropriate "to protect diligent parties whose adversaries are clearly unresponsive." Niemic v. Maloney, 409 F. Supp. 2d 32, 37 (D. Mass. 2005). Entry of default is the proper remedy when a party fails to file a responsive pleading in a timely manner, especially where there is no doubt that the party had notice of the claims. See e.g., Venegas-Hernandez v. Sonolux Records, 370 F. 3d 183, 187-88 (1st Cir. 2004). Likewise, entry of default is not an abuse of discretion where a party has ignored the Court's deadlines, or where the submissions once made are "incomplete, vague or evasive." Diaz-Fonseca v. Commonwealth of Puerto Rico, 451 F. 3d 13 (1st Cir. 2006). This is particularly the case where the Court has warned the party in advance that sanctions may be imposed for flouting those deadlines. Id.

Here, Mr. Aguiar has filed his pleadings late, and he has not answered the counterclaims against him. Mr. Aguiar has been "clearly unresponsive," has ignored deadlines, and has been incomplete in his submissions. Furthermore, he had ample notice of the deadlines and ample warnings of the consequences of missing those deadlines. Therefore, entry of default is appropriate. Mr. Aguiar's *pro se* status does not alter this result. See In Re Jones, 279 B.R. 366 (Bankr. M.D. Ga. 2001) (entering default against *pro se* party for failure to file answer, even though defaulting party had meritorious defenses and other party had not been prejudiced).

Moreover, Mr. Aguiar does not have meritorious defenses to Mr. Webb's counterclaims. This is particularly true with regard to Mr. Webb's counterclaims for declaratory judgment of non-infringement and fair use. The barely intelligible "answer" does not even refute the principal grounds for Mr. Webb's counterclaims, including the allegation that Mr. Webb's

---

(Footnote Continued from Previous Page.)

activities constituted fair use. Even if one attempts to divine Mr. Aguiar's potential defenses from the amended complaint, that document does little more than repeat the vague and inadequate pleadings of the initial complaint which, read with extreme liberality, are concerned with three items. First, Mr. Aguiar continues to purport to sue Mr. Webb over the copyright to film footage which he does not claim to own, but which he states the Creedens own. Second, a large portion of Mr. Aguiar's claim continues to sound in trademark infringement, based on the alleged use of "logos" on various websites. Indeed, despite the fact that Mr. Aguiar presents no evidence of trademark ownership or of his ownership of any other intellectual property right with regard to any "logo" or trade name, the only alleged infringement pleaded with a modicum of specificity implicates trademark, not copyright, issues.[7] Finally, Mr. Aguiar's Amended Complaint mentions "photos," by which he most likely refers Mr. Webb's limited use in his film trailers of pictures from the book "World's Deadliest Fighting Secrets," the copyright of which is registered to Count Dante. This use has already been extensively briefed by the parties and the Court has ruled that it was likely a "fair use." Mr. Aguiar has pleaded nothing new to suggest that the Court's final decision, on summary judgment or otherwise, would be any different.

Furthermore, the prejudice to Mr. Webb from Mr. Aguiar's delays is clear. Mr. Aguiar's efforts both in court and out of court are aimed at stopping Mr. Webb from completing his film or, in the alternative, intimidating him into making the film in a certain way. Mr. Aguiar has stated in Court that his main concern is "control" of any story involving his father, and Mr. Creeden has made clear his intention to stop the film by, *inter alia,* harassment and threats.

---

[7] Mr. Aguiar has offered as attachments to his Complaint pages from Mr. Webb's website, which display various logos and trade names but nothing else. Defendant Webb reminds the Court that in his Opposition to Mr. Aguiar's Motion for a Preliminary Injunction, filed October 12, 2007, he presented evidence that Mr. Aguiar owned no registered trademarks and furthermore that Mr. Aguiar intentionally misrepresented his ownership of these same marks.

Moreover, Mr. Webb has avowed, and it can scarcely be doubted, that the pendency and length of these proceedings is directly and negatively affecting his prospects for distribution, funding and exhibition.[8]

In the alternative, Judgment on the Pleadings is appropriate because Mr. Aguiar's "answer," even if taken as completely true, see Mass. Nurses Assoc. v. North Adams Regional Hosp., 396 F. Supp. 2d 30 (2005), fails to address, let alone effectively refute, Mr. Webb's counterclaims for declaratory judgment, particularly those alleging fair use.[9] As a further alternative, Defendant Webb requests that this court exercise its discretion to impose the appropriate sanctions.

## Conclusion

For the foregoing reasons, Defendant Webb requests that this Court:

1. Enter default and order default judgment against Mr. Aguiar on Mr. Webb's counterclaims for declaratory judgment of non-infringement of copyright and copyright fair use (Counts II & III);

2. Dismiss Mr. Aguiar's Complaint with prejudice;

3. Enter default and order default judgment against Mr. Aguiar on Mr. Webb's counterclaims for declaratory judgment of non-infringement of trademark and trademark fair use (Counts V & VI);

4. Enter default and order default judgment against Mr. Aguiar on Mr. Webb's counterclaims for copyright misuse and copyright misrepresentation (Counts I & IV) with damages in an amount to be proven;

5. Grant such other relief that the Court deems just and equitable.

6. Alternatively, Defendant Webb requests that this Court issue Judgment on the Pleadings and grant such other relief that the Court deems just and equitable.

7. Alternatively, Defendant Webb requests that this Court impose appropriate sanctions and

---

[8] Indeed, Mr. Creeden has stated in no uncertain terms that denying these opportunities to Mr. Webb is his goal ("My goal is no funding for you"). (Ex. J).

[9] This court also has the option of considering materials outside the pleadings, such as the parties' papers on Mr. Aguiar's Motion for a Preliminary Injunction which address the fair use issue, and converting this motion into one for summary judgment. See Garita Hotel Ltd. Partnership, Etc. v. Ponce Federal Bank, F.S.B., 958 F. 2d 15, 18 (1st Cir. 1992).

grant such other relief that the Court deems just and equitable.

To the extent that the Court determines that a hearing is necessary on this Motion, Mr. Webb requests that it be heard on May 9, 2008, the date the Court has already set for the next scheduling conference.

Respectfully submitted,

FLOYD WEBB,

By his attorneys,

/s/ David A. Kluft
Brandy A. Karl (BBO #661441)
Lawrence Lessig (*pro hac vice*)
Anthony Falzone (*pro hac vice*)
Julie Ahrens (*pro hac vice*)
Center for Internet and Society
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305-8610
bkarl@stanford.edu
Tel: (650) 724-0517

and

Michael Boudett (BBO # 558757)
David Kluft (BBO # 658970)
Walead Esmail (BBO # 666347)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

*Attorneys for Defendant Floyd Webb*

Dated: April 8, 2008

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(A)(2)

    I hereby certify that I conferred with *pro se* Plaintiff Aguiar in a good faith effort to resolve or narrow the issues presented herein.

                                    /s/ Walead Esmail
                                    Walead Esmail

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and a paper copy was sent to those indicated as non registered participants on April 8, 2008.

                                    /s/ Walead Esmail
                                  Walead Esmail