UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM V. AGUIAR, III,

             Plaintiff,

   v.

FLOYD WEBB, BARRON SHEPPARD,
WENDY SHEPPARD and ASHIDA KIM
a/k/a CHRISTOPHER HUNTER and
a/k/a RADFORD DAVIS,

             Defendants.

Civil Action No. 07-CA-11673-MLW

## DEFENDANT FLOYD WEBB'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S APPLICATION FOR ATTORNEYS' FEES

On May 16, 2008, Defendant Floyd Webb submitted an Application for Attorneys' Fees related to his motion for sanctions against Plaintiff William V. Aguiar, III ("Mr. Aguiar"). Mr. Aguiar submitted his Opposition to that Application on May 23, 2008. Pursuant to the Court's order of May 9, 2008, Mr. Webb now replies.

The basis for Mr. Webb's motion for sanctions involved, *inter alia,* over eight months of flouted Court orders, missed deadlines, unintelligible pleadings and on-line harassment by Mr. Aguiar's associate. The harm caused by Mr. Aguiar's behavior include expenditure of time and effort by Mr. Webb's attorneys, the drain on Court attention and resources, and financial harm to Mr. Webb in the form of fundraising difficulties, the need to take time off from paid work to attend to this case, and other expenditures (such as round-trip air fare from Chicago to attend hearings on two occasions, only to find Mr. Aguiar was unprepared to proceed).

Mr. Aguiar now argues that the appropriate sanction against him is zero. The grounds for this argument are threefold: (1) he is unable to pay, (2) he promises future

compliance and (3) his behavior does not warrant the sanction imposed. Mr. Aguiar has failed to make a persuasive case on any of these grounds. He has not met his burden of showing an inability to pay, he has not properly addressed the issue of deterrence, and his continuing failure to appreciate the consequences of his actions belies the bald assertion that he has now learned his lesson. Accordingly, this Court should award sanctions in the full amount requested by Mr. Webb.

**Argument**

The imposition of sanctions is meant to serve several purposes, including the deterrence of future litigation abuse, the punishment of present litigation abuse, compensation, and the facilitation of case management. Navarro-Ayala v. Nunez, 968 F. 2d 1421, 1426 (1st Cir. 1991); White v. General Motors Corp., 908 F. 2d 675, 683 (10th Cir. 1990), cert. denied, 498 U.S. 1069 (1991); see also, Media Duplication Services v. HDG Software Inc., 928 F. 2d 1228, 1242 (1st Cir. 1991) (discussing sanctions in the Rule 16(f) context). In considering whether a particular sanction of attorneys' fees effectively vindicates these purposes, Courts typically look to four factors: (1) the reasonableness of the fees requested; (2) the offender's ability to pay; (3) the minimum amount necessary to deter the conduct and; (4) other considerations as deemed appropriate in individual circumstances, such as evidence of bad faith and the history of the party's behavior. White, 908 F. 2d at 684-685. Mr. Aguiar's arguments and showings as to each factor are inadequate and unpersuasive.

### A.  Reasonableness of Fees

Mr. Aguiar's Opposition does not challenge the reasonableness of the fees requested. See Silva v. Witschen, 19 F. 3d 725, 732-733 (1st Cir. 1994) (allowing full fees requested where party did not challenge reasonableness). As Mr. Webb's

Application demonstrates, the amount requested here is significantly lower than the actual value of the time and expense associated with Mr. Aguiar's behavior. As noted previously, Mr. Aguiar has declined opportunities to engage in a discussion of reasonableness and instead appears to take the position that because the payment of any amount would be unjust, the issue of reasonableness is not relevant.

### B. Ability to Pay

Mr. Aguiar has not met the burden necessary to show inability to pay. The "ability to pay" factor is "treated as reasonably akin to an affirmative defense, with the burden upon the part[y] being sanctioned to come forward with evidence of [his] financial status." Id. (quoting White, 908 F. 2d at 685). As the cases cited by Mr. Aguiar demonstrate, a party claiming inability to pay meets this burden by showing income from all sources, expenses and debts, net worth and total assets including real estate, bank accounts and retirement benefits. Bullard v. Downs, 161 Fed. Appx. 886, 887 (11th Cir. 2006) (unpublished); Pellegrini v. Analog Devices, Inc., 2006 U.S. Dist. LEXIS 67131 at *3 (D. Mass. 2006); Myers v. America's Servicing Co., 227 F.R.D. 268, 271 (E.D. Va. 2005).

A party seeking to avoid sanctions may not meet this burden by simply approximating his income in vague terms, but that is what Mr. Aguiar has done. He approximates his salary from 2007 and then refuses to quantify the additional amount he purports to receive from the sale of books and videos. Mr. Aguiar avows that he has expenses but refuses to state what they are. Moreover, he has not listed a single asset, which is particularly troubling given that his case rests upon the assertion that he owns intellectual property rights (and rare memorabilia) which he has previously described as

quite valuable.¹

In fact, Mr. Aguiar's submissions are nearly identical to those that were found inadequate in Frank v. L.L. Bean, Inc., 377 F. Supp. 2d 229 (D. Me. 2005). In that case, a *pro se* plaintiff claiming inability to pay submitted an affidavit which

> states that she is unemployed and supports herself and her 19-year-old son through her disability payments of $1,529.00 a month. Plaintiff represents that her monthly living expenses consume most or all of these payments. Plaintiff does not discuss any savings or other substantial assets, including real property and a retirement account from her employment.

Id. at 231. Despite Frank's assertion of hardship, she omitted a full discussion of her financial condition and therefore she did not "demonstrate that she is truly unable to pay the sanction." Id. at 233.² Mr. Aguiar's submission on his financial condition is no more detailed and therefore insufficient to meet his burden.³

---

¹ Also troubling in this context is Mr. Aguiar's recent insertion of a new plaintiff into this case, an entity called "The Black Dragon Fighting Society." Mr. Webb's position is that the entity described does not exist and that its description is at odds with Mr. Aguiar's previous representations to the Court. That notwithstanding, if Mr. Aguiar now takes the position that this entity exists and that he owns it, such interest should have been disclosed as an asset.

² In Frank, the plaintiff filed her affidavit late, but the Court stated that its ruling would have been the same even if the affidavit had been timely. Frank v. L.L. Bean, Inc., 377 F. Supp. 2d 229, 232-233 (D. Me. 2005).

³ To the extent that Mr. Aguiar's own prior statements bear on this issue, Defendant also notes that earlier in this matter, co-defendant Radford Davis filed a financial affidavit on the basis of which he sought leave to be excused from a scheduling conference, owing in part to the cost of air travel and his role as sole caretaker of an elderly mother. In opposition to that request, Mr. Aguiar chided Mr. Davis for his alleged failure to include a full rendition of his assets, accused him of omitting income worth one thousand dollars, and demanded that the Court issue sanctions and a criminal complaint as punishment. Mr. Aguiar further demanded that Mr. Davis "prove that his mother is still alive." He stated: "the proof is in the pudding" and concluded that Mr. Davis had presented only a "vague unproven hypothetical situation" insufficient to show "that there is a hardship." Ironically, the information submitted by Mr. Davis was far more detailed than that recently submitted by Mr. Aguiar. The documents referred to are at docket ##'s 56 & 58.

**C. Deterrence**

The minimum sanction necessary to deter wrongful conduct is necessarily dependent upon and will vary according to the ability of the wrongdoer to pay. Myers, 227 F.R.D. at 271. Therefore, Mr. Aguiar's refusal to submit adequate information as to his ability to pay renders his arguments about deterrence meaningless and unhelpful. However, even if Mr. Aguiar had made a proper showing of his financial condition, his claim that "there is no need for deterrence here" because he now has counsel is lacking in merit for two principal reasons.

First, the concept of deterrence is not based simply on the likelihood that this particular plaintiff will continue to misbehave in this particular case. Rather, "[a]s a deterrent, sanctions speak largely to systemic concerns" and the institutional goal of ensuring that parties do not "ignore the rules, overlook due dates, or flout court orders." Anderson v. Beatrice Foods, Co., 900 F. 2d 388, 394-395 (1st Cir. 1990). "What lies behind the sanctioning power is not merely, or perhaps even principally, the desirability of punishing a party or counsel for dilatory actions or inaction, but . . . to deter others from similar conduct." Barreto v. Citibank, 907 F. 2d 15, 16 (1st Cir. 1990). If parties could avoid sanctions at the last minute simply by retaining counsel or promising future compliance, this Court would be unable to manage its docket and parties would have no incentive to take its orders seriously.

Second, even to the extent that deterrence of Mr. Aguiar individually is a legitimate concern, his suggestion that the mere presence of new counsel guarantees a Damascene conversion is undermined by the case law he cites, which is replete with examples of mischief by represented parties and counsel. Moreover, Mr. Aguiar's consistently dismissive attitude towards the consequences of his behavior, an attitude he

continues to exhibit in his Opposition, is a further indication that individualized deterrence is appropriate. Mr. Aguiar argues that no sanctions are warranted because the harm caused by his conduct was only "a delay of at most a couple weeks relatively early in the case." He then describes his conduct as consisting of mere "procedural defects." The only reason the delay he recently caused was "relatively early in the case" is because his prior behavior had prevented the case from moving forward and, as the Court well knows, Mr. Aguiar's actions have comprised and caused months of wheel-spinning, the consequences of which continue to this day and far exceed isolated procedural gaffes.[4]

### D. Bad Faith

Mr. Aguiar asserts that "there is no evidence that bad faith or malice motivated [his] behavior" or that "his filings have been indicative of an improper purpose." He offers nothing to back up this assertion except the representation of counsel, unsupported by affidavit or any other evidence, that Mr. Aguiar had pure motives and therefore his "procedural defects" should be forgiven in light of his misunderstanding of a complicated judicial system.

In fact, the evidence of Mr. Aguiar's bad faith is legion, even according to the standard he has articulated. As in the example cited by Plaintiff, Myers, 227 F.R.D. at 269 (ordering sanctions against *pro se* plaintiff),[5] Mr. Aguiar has issued a relentless

---

[4] For the proposition that lesser or no sanctions are an appropriate deterrent, Mr. Aguiar cites two cases, neither of which support his position. In Diapolo v. Moran, 407 F. 3d. 140, 146 (3rd Cir. 2005), the Court's decision to award sanctions other than attorneys' fees was based in part on the fact that the party pursuing sanctions had already won an abuse of process claim in state court based on the same behavior. In Navarro-Ayala v. Nunez, 968 F. 2d 1421, 1427-28 (1st Cir. 1992), the Court reduced the amount of sanctions because the individual sanctioned was a civil servant with no personal stake in the litigation, because there was insufficient record evidence of the expense attributable to the sanctioned conduct, and because said conduct was not disruptive to the litigation.

[5] In that case, as in this one, the plaintiff retained counsel at the last minute in an attempt

(Footnote Continued on Next Page.)

stream of "nonsensical" and frivolous filings, asserting accusations of criminal acts, conspiracies, fraud on the court, defamation and various imagined rights under the Digital Millennium Copyright Act. Moreover, Mr. Aguiar stated to this Court in affidavits and other papers that he was the owner of registered trademarks that he knew he did not own,[6] and brought copyright claims based on film footage he has sworn under penalty of perjury is owned by someone else.[7] All the while, Mr. Aguiar knowingly fed information to his friend John Creeden, who used it to publish a running on-line commentary about this case, including death threats and racial slurs against Mr. Webb.

      Mr. Aguiar claims that his past failings were in part due to his inability to secure representation. However, Mr. Aguiar had representation in this very matter, an attorney named John Francouer, who authored the cease and desist letters that began this dispute. Mr. Aguiar, who is the plaintiff in this matter and therefore chose the date of its commencement, decided to proceed without Attorney Francouer for whatever reason (financial or otherwise). At the first scheduling conference, Mr. Aguiar asked for more time to find new counsel, and thereafter changed his story repeatedly about whether or not he was seeking counsel at all. The fact that he finally retained counsel nearly nine

---

(Footnote Continued from Previous Page.)

to avert sanctions. Myers v. America's Servicing Co., 227 F.R.D. 268, 270 (E.D. Va. 2005).

[6] As the Court will recall, in the Summer of 2007 Mr. Aguiar signed sworn affidavits accompanying threatening letters to Mr. Webb and others, in which he claimed ownership of registered trademarks that shortly before had been rejected by the PTO. He later alleged his ownership of these registered marks to the Court, without bothering to mention that they had been canceled.

[7] Mr. Aguiar's Second Amended Complaint, Docket #108, persists in claiming copyright infringement based on this same footage. This issue will be discussed in greater detail in a forthcoming motion or motions.

months later is hardly evidence of good faith or a harbinger of future compliance.[8]

### E. Compensation

Compensation is, after deterrence, an important secondary goal of sanctions. "As compensation, sanctions recognize that a litigant's failure to abide court orders and rules, or his disregard of obligations inherent in the conduct of litigation, harm not only the system but the other participants in the process." Anderson, 900 F. 2d at 394-395. Therefore, sanctions should seek to "adjust[] the scales so that the extra time, effort and expense to party "A" which occurs in consequence of the dereliction of party "B" can be repaid in some equitable fashion". Id.

Mr. Aguiar argues that this goal will be frustrated if sanctions are paid to Mr. Webb's attorneys, who are acting *pro bono*. Mr. Aguiar cites no authority for the proposition that this should be a consideration. C.f., Blum v. Stenson, 465 U.S. 886, 894-895 (1984) (*pro bono publico* status of representation does not effect award of attorneys' fees). However, to the extent this is a concern, Defendant would not object to a modification of the award such that the amount is paid directly to Mr. Webb for his film. Since the most devastating impact of Mr. Aguiar's behavior has been its effect on Mr. Webb's fundraising efforts and free speech, and since Mr. Aguiar professes concern that the "punishment fit the crime," such a result would be entirely equitable.

---

[8] As to Mr. Aguiar's appeal to equity, Defendant recounts Mr. Aguiar's own words. When Radford Davis (prior to retaining counsel) was having apparent difficulty understanding the procedural rules, Mr. Aguiar submitted multiple requests for sanctions against him based on alleged incomplete disclosure of information, "baseless accusations," and failure to comply with (premature) discovery requests. In these filings, Mr. Aguiar quoted the Federal Rules of Procedure, and lectured Mr. Davis that because he decided to "pro se himself," he was obliged to follow the rules and "to act appropriately as an officer of this Court." See docket ##'s 56, 72 and 73.

## Conclusion

For the foregoing reasons, Defendant Webb asks this Court to order Plaintiff William V. Aguiar III to pay the full amount requested, $9,102.00.

Respectfully submitted,

FLOYD WEBB,

By his attorneys,

/s/ David A. Kluft
Brandy A. Karl (BBO #661441)
Lawrence Lessig (*pro hac vice*)
Anthony Falzone (*pro hac vice*)
Julie Ahrens (*pro hac vice*)
Center for Internet and Society
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305-8610
bkarl@stanford.edu
Tel: (650) 724-0517

and

Michael Boudett (BBO # 558757)
David Kluft (BBO # 658970)
Walead Esmail (BBO # 666347)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

*Attorneys for Defendant Floyd Webb*

Dated: May 27, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system on May 27, 2008 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ David A. Kluft
David A. Kluft