UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM V. AGUIAR, III and the BLACK DRAGON FIGHTING SOCIETY, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) C.A. No. 07-11673 MLW |
| FLOYD WEBB, | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT
FLOYD WEBB'S 12(b)(6) MOTION TO DISMISS**

Plaintiffs submit this memorandum in opposition to Defendant's motion to dismiss. This case arises from the unauthorized use of Plaintiffs' copyrighted works to promote, advertise, and raise money for Defendant's movie, expected to be called *The Search for Count Dante*. Plaintiff William V. Aguiar III ("Aguiar") first brought this action *pro se* in September 2007. On May 23, 2008, pursuant to this Court's scheduling order, Aguiar, with Plaintiff Black Dragon Fighting Society, filed the Second Amended Complaint. Defendant now seeks to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The allegations of the Second Amended Complaint, however, meet each of the elements of the claims asserted. Plaintiffs own the asserted copyrights and have been damaged, and will continue to be damaged, by Defendant's use of their intellectual property. Additionally, Defendant's use of William V. Aguiar II's image and likeness in promotional materials and solicitations violates the plain terms of M.G.L. c. 214, § 3A. Accordingly, Defendant's motion should be denied.

## BACKGROUND

Aguiar is the leader of a martial arts organization called the Black Dragon Fighting Society. [Second Amended Complaint ¶ 2 (Dkt. No. 108).][1] The Black Dragon Fighting Society—founded in Chicago, Illinois by Count Juan Raphael Dante (otherwise known as John Keehan)—was moved to Fall River, Massachusetts in the 1970s and has continued to exist there through today. [*Id*. at ¶ 3.] On September 7, 2007, Aguiar filed a complaint charging Defendant Floyd Webb with, among other things, copyright infringement based upon a promotional website and trailers for a movie Defendant is purportedly creating. [*See* Complaint (Dkt. No. 1).] On May 23, 2008, Plaintiffs Aguiar and the Black Dragon Fighting Society filed the Second Amended Complaint in accordance with the scheduling order. As described in the Second Amended Complaint, Plaintiffs own registered copyrights in two editions of the martial arts book *World's Deadliest Fighting Secrets* and a video containing rare film footage of Count Dante and Aguiar II performing the "Dance of Death." [Second Amended Complaint ¶¶ 14, 19, 22.] The "Dance of Death" is a martial arts "kata," or choreographed series of movements, comprising of a set sequence of specific defensive postures, movements, and forms. [*Id.* at ¶ 12.] The Second Amended Complaint includes the following explicit allegations concerning ownership of the copyrights at issue:

> "This action arises from Defendant Floyd Webb's unauthorized use of certain intellectual property *owned and controlled* by William V. Aguiar, III and the Black Dragon Fighting Society." [*Id.* at ¶ 1 (emphasis added).]
> \* \* \*
> "The website and trailers prominently feature intellectual property *owned and controlled* by Aguiar III and/or the Black Dragon Fighting Society . . . ." [*Id.* at ¶ 27 (emphasis added).]
> \* \* \*
> "By his actions alleged above, Defendant has infringed and will continue to infringe copyrights *owned and controlled* by Aguiar III and the Black Dragon

---

[1] A copy of the Second Amended Complaint is attached hereto as <u>Exhibit A</u>.

> Fighting Society by copying, distributing, and publishing certain copyrighted photographs, illustrations, and video." [*Id.* at ¶ 30 (emphasis added).]
>
> \* \* \*
>
> "Defendant's acts of infringement are in degradation of and injurious to Plaintiffs' exclusive rights as the *owners and/or administrators* of the copyrights." [*Id.* at ¶ 33 (emphasis added).][2]

The Second Amended Complaint also describes the registration of the copyrights by the prior leaders of the Black Dragon Fighting Society and the history of the organization, now under the directorship of Aguiar.

Defendant has used Plaintiffs' copyrighted material, without permission, for his own benefit. Among other things, Defendant maintains a promotional website and has created at least two movie trailers, which prominently feature Plaintiffs' copyrighted material, including the cover of the 1968 edition of the *World's Deadliest Fighting Secrets*, photographs of Count Dante performing the "Dance of Death" contained in the *World's Deadliest Fighting Secrets* books, and the film of Count Dante and Aguiar II performing the "Dance of Death." [*Id*. at ¶¶ 25-28.] Such use violates the Copyright Act.

In addition to claims of copyright infringement, Plaintiffs bring claims under M.G.L. c. 214, § 3A, arising from Defendant's use of Aguiar II's name and picture in the promotional materials for *The Search for Count Dante.* [Second Amended Complaint ¶¶ 37-42.]

On June 6, 2008, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendant contends that Plaintiffs failed to allege ownership of the copyrights and that he is immune from liability for the unauthorized use of Aguair II's image and likeness because of

---

[2] Notably, these allegations do not differ from those allegations asserted in the original Complaint or the Amended Complaint. [Complaint ¶ 7 ("Defendant's have infringed upon plaintiff's copyrighted materials and has caused William V. Aguiar III severe financial damage.") (Dkt. No. 1); Amended Complaint ¶ 4 ("The Plaintiff states factually that he is the owner of copyrights #A86679 Worlds Deadliest Fight Secrets, #tX3161682 World Deadliest Fighting Secrets, #PAU673807 Worlds Deadliest Fighting Secrets, #PAU617092 Worlds Deadliest Fighting Secrets II concerning the Black Dragon Fighting Society, World Karate Federal, John Timothy Keehan, Count Dante.") (Dkt. No. 86).]

the subject matter of the movie he purports to be soliciting money for. As described below, Defendant's motion should be denied in its entirety.

## ARGUMENT

**I. Applicable Legal Standard**

"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Druker v. Sullivan*, 334 F. Supp. 861, 864 (D. Mass. 1971) (citing Wright & Miller, Federal Practice and Procedure § 1357). In evaluating the sufficiency of the allegations, the Court must accept the Second Amended Complaint's well-pleaded facts as true and indulge all reasonable inferences in favor of the Plaintiffs. *See Cook v. Gates*, Nos. 06-2313, 06-2381, 2008 WL 2332526, at *4 (1st Cir. June 9, 2008). Although Plaintiffs' claims must be more than speculative, the essential question is "whether, under *any* theory, the allegations are sufficient to state a cause of action in accordance with the law." *Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 530 (1st Cir. 1995) (emphasis added). *See also Cook*, 2008 WL 2332526 at *4 ("To survive a motion to dismiss, a complaint must allege a 'plausible entitlement to relief.'"); *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) ("Dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.") (internal quotations omitted). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 n.8 (2007). *See also Moore v. La-Z-Boy, Inc.*, C. A. No. 07-CV-10708-RGS, 2008 WL 2247146, at *3 (D. Mass. May 30, 2008) (denying motion to dismiss in light of the "forgiving standard of Rule 12(b)(6)" and notwithstanding that

defendant raised "serious doubts as to the ultimate sustainability of plaintiffs' claims"). Only when the complaint fails to meet the liberal pleading standard of Federal Rule 8(a) is it subject to dismissal for failure to state a claim. Wright & Miller, *Federal Practice and Procedure* § 1356 (citing cases).

II.     **Plaintiffs Have Sufficiently Pled Copyright Ownership and Infringement Pursuant to Fed. R. Civ. P. 8(a).**

Plaintiffs have sufficiently pled ownership of the copyrights at issue. [See Amended Complaint ¶¶ 1, 27, 30, 33.] For this reason alone, Defendant's motion must be denied.

Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Notably, Rule 8 does not require an ideal complaint, only a short and plain one to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Metro. Prop. & Cas. Ins. Co. v. Boston Reg'l Physical Therapy, Inc.*, 538 F. Supp. 2d 338, 341 (D. Mass. 2008) (applying *Twombly* in case seeking damages for unpaid medical bills and alleging unfair trade practices). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 127 S. Ct. at 1969. *See also Elektra Ent'mt Group, Inc. v. Barker*, Case No. 05-CV-7340, 2008 U.S. Dist. LEXIS 25913, at *7 (S.D.N.Y. March 31, 2008).

To the extent that Defendant implies that Plaintiffs have failed to meet some heightened standard for pleading copyright infringement, such implication must be rejected. *See Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 964 (N.D. Tex. 2006) (finding plaintiff's assertions concerning ownership of copyrights for "some" works listed on an exhibit to the complaint without further specification sufficient to survive a motion to dismiss for failure to state a claim). As the Court in *Arista Records* noted, "Although Federal Rule of Civil Procedure

9 imposes a heightened standard for allegations of fraud or mistake, most causes of action, including copyright infringement claims, must satisfy only the minimal notice-pleading requirements of Federal Rule of Civil Procedure 8." *Id.* (citing, among others, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Once notice is provided, discovery and summary judgment motions refine the claims, expose disputed facts, and dispose of meritless claims. *Id.* at 965.

Here, Plaintiffs properly fulfilled their pleading obligation by stating and describing ownership over specific copyrighted material, which Defendant has, and continues to, infringe. The Second Amended Complaint contains at least four separate explicit articulations of copyright ownership.

> "This action arises from Defendant Floyd Webb's unauthorized use of certain intellectual property *owned and controlled* by William V. Aguiar, III and the Black Dragon Fighting Society." [Second Amended Complaint ¶ 1 (emphasis added).]
>
> \* \* \*
>
> "The website and trailers prominently feature intellectual property *owned and controlled* by Aguiar III and/or the Black Dragon Fighting Society . . . ." [*Id.* at ¶ 27 (emphasis added).]
>
> \* \* \*
>
> "By his actions alleged above, Defendant has infringed and will continue to infringe copyrights *owned and controlled* by Aguiar III and the Black Dragon Fighting Society by copying, distributing, and publishing certain copyrighted photographs, illustrations, and video." [*Id.* at ¶ 30 (emphasis added).]
>
> \* \* \*
>
> "Defendant's acts of infringement are in degradation of and injurious to Plaintiffs' exclusive rights as the *owners and/or administrators* of the copyrights." [*Id.* at ¶ 33 (emphasis added).]

In addition, the Second Amended Complaint describes the registrations of the copyrights at issue by prior leaders of the Black Dragon Fighting Society, including Plaintiff Aguiar's father, and Plaintiff Aguair's control of the organization.

Defendant's motion notably ignores these plain factual allegations. Defendant instead offers a series of extensive factual arguments beyond the scope of the complaint and, although he suggests that his motion does not depend on these facts, he devotes a significant portion of his

supporting memorandum to them. At most, Defendant's motion attempts to sidestep his liability by focusing attention on irrelevant (and disputed) facts and misstatements of the law.[3]

A motion to dismiss based on Rule 12(b)(6) is not the appropriate procedural device to dispute facts in the complaint. *Travers-Sheik v. Habit Management, Inc.*, C.A. No. 05 11631 GAO, 2006 WL 3775957, at *2 (D. Mass. Dec. 20, 2006). Rather, taking Plaintiffs allegations to be true and with all reasonable inferences drawn in their favor, Plaintiffs have demonstrated that they are entitled to proceed with their claim under the Copyright Act. The resolution of whether they can ultimately meet their burden of proof must be reserved for another day—a day when all the relevant facts are before the Court. *See Moore*, 2008 WL 2247146 at *3 (stating that raising "serious doubts as to the ultimate sustainability of plaintiffs' claims" does not warrant dismissal for failure to state claim). Defendant's suggestion that Plaintiffs come to this Court with unclean hands or have brought these claims with the knowledge that they do not own the intellectual property at issue is absurd. Plaintiffs have asserted in good faith "the simple fact of [] ownership." [Motion at p. 9.] It is Defendant who now insists on disputing that "simple fact." Defendant's motion only demonstrates that there are serious issues of material fact with respect Plaintiffs' claims of ownership;[4] it does not establish that Plaintiffs' have failed to state a claim for relief under the Copyright Act.

### III. The Second Amended Complaint Properly Sets Forth A Cause of Action Under M.G.L. c. 214, § 3A.

Plaintiffs also state a claim under M.G.L. c. 214, § 3A. Section 3A provides that "[a]ny person whose name, portrait or picture is used within the commonwealth for advertising

---

[3] Contrary to the assertions in Defendant's motion, the Second Amended Complaint is entirely consistent with Aguiar's prior statements in the litigation.

[4] Defendant has not brought a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 because he can not; the disputed issues of material fact he raises are simply too numerous.

purposes or for the purposes of trade without his written consent may bring a civil action . . . ." The Second Amended Complaint alleges, "Defendant has knowingly used Aguiar II's name and picture in the promotional materials for his movie *The Search for Count Dante* without the written consent of Plaintiffs." [Second Amended Complaint ¶ 40.] Defendant, without permission, uses Aguiar II's name on the website, www.thesearchforcountdante.com. [*Id.*] On that website, Defendant posts information concerning Count Dante, Aguiar II, the Plaintiffs, and Defendant's purported movie, as well as, solicits financial support through donations and, from time to time, through the selling of t-shirts. [*Id.* at ¶ 25.] He also uses Aguar II's portrait and picture in a trailer for the movie. The trailer features—what Defendant himself characterizes as "historically significant"—film footage of Aguiar II and Count Dante performing the "Dance of Death." [*Id.* at ¶ 27.] Defendant does not contest that he has used Aguiar II's name, portrait, and picture in connection with advertising for his own benefit. Rather, he now contends that his unauthorized use is excused because of the nature of the movie he is purportedly creating.

Defendant's argument is based on the theory that the First Amendment right to freedom of speech enables him to use Aguiar II's image in a movie without permission; however, to date, *there is no movie.* Neither Plaintiffs nor this Court can evaluate whether Defendant's work should be afforded free speech protection when the work has not yet come into existence. So far, Defendant has used Aguiar II's image only to raise money and sell T-shirts on his website. Defendant never claims that these are protected activities. Moreover, the record is devoid of facts concerning Defendant's use of the proceeds of such activities; it provides no information as to whether the funds Defendant has raised are being devoted to his movie or something else.

Even if there were a movie to evaluate, Defendant's claim for immunity from M.G.L. c. 214, § 3A cannot be resolved on a motion to dismiss because there is no evidentiary record to evaluate the claim. In order to even assert a First Amendment privilege, Defendant must

- 8 -

establish at the threshold that the expression is of such a nature that it constitutes protectable speech. *See, e.g.*, *Tropeano v. The Atlantic Monthly Co.*, 379 Mass. 745, 750-51 (1980) (finding "incidental publication" only after determining that the article was a "social commentary"). Hence, any analysis of Defendant's claims to immunity requires the Court to distinguish between protected and unprotected works. *See, e.g.*, *Comedy III Prods.*, 25 Cal. 4th at 403. At least one court has made such an evaluation by importing the first factor of the traditional four-factor test for fair use as applied in the copyright context—that is, by analyzing the purpose and character of the use. *Id.* at 404 ("This inquiry into whether the work is 'transformative' appears to us to be necessarily at the heart of any judicial attempt to square the right of publicity with the First Amendment."). *See also ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915 (6th Cir. 2003). An analysis of the "purpose and character of the work," like the fair use test as a whole, is a mixed question of fact and law. *See Fitzgerald v. CBS Broadcasting, Inc.*, 491 F. Supp. 2d 177, 183 (D. Mass. 2007).

Cases cited by Defendant relating to biographical works and docudramas—and their promotion—are inapposite. In each of those cases the Court found a protected expression based upon a review of the evidence.[5] Here, there has been no review of the evidence and no finding that the future movie is protected. In other words, Defendant *presupposes* that his future movie

---

[5] *See, e.g.*, *Albright v. Morton*, 321 F. Supp. 2d 130 (D. Mass. 2004) (the works in issue, including the Book and article, were before the court); *William v. Newsweek, Inc.*, 63 F. Supp. 2d 734 (E.D. Va. 1999) (article and photograph in question before the court); *Seal v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa. 1996) (on summary judgment categorizing the film as a docudrama); *Morrell v. Forbes, Inc.*, 603 F. Supp. 1305 (D. Mass. 1985) (on summary judgment determining article detailed organized crime in wholesale fish markets and was for non-commercial use); *Old Colony Donuts, Inc. v. American Broadcasting Companies, Inc.*, 365 F. Supp. 785, 788 (D. Mass. 1974) (review of the script of the broadcast program revealed that the subject matter of the program was heart disease and, thus, a matter of public interest protected by the First Amendment); *Comedy III Productions Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (2001) (basing determination of transformative nature of the work on stipulated facts); *Velez v. VV Publish Corp.*, 524 N.Y.S.2d 186 (N.Y. App. Div. 1988) (Village Voice cover and advertisement before the court); *Tropeano v. The Atlantic Monthly Co.*, 379 Mass. 745 (1980) (truncated portion of the article attached to the Complaint established that the subject matter dealt with modern sexual and social mores).

will be of a nature that entitles it to First Amendment protection. That "fact" is not yet supported by the Second Amended Complaint or the evidence.

Even accepting that Defendant's movie may be entitled to free speech protections, which Plaintiffs dispute, Defendant's motion fails. The Court must weigh any potential First Amendment right against Aguiar II's statutory right in his name and likeness, which necessarily involves a fact intensive inquiry that cannot be accomplished on the undeveloped record. For example, in *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977), the Supreme Court held that a film of plaintiff's "human cannonball" act was protected under Ohio's right of publicity statute and that the television broadcast of the entirety of that act was not protected by the First Amendment. Justice White, writing for the majority noted, "There is no doubt that entertainment, as well as news, enjoys First Amendment protection. It is also true that entertainment itself can be important news." *Id.* at 578. Nevertheless, the Court held that the plaintiff was entitled to be paid for the broadcast of his performance, regardless of whether the violative broadcast be characterized as entertainment, news, or both. *Id.* "[I]n balancing the relative importance of the interests at stake," the Supreme Court found that the scales weighed in favor of the state law interest in protecting Zacchini's right to publicity. *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 401 (2001) (interpreting *Zacchini*). Here, too, the Court should find that the scales weigh in Plaintiffs favor. That finding, however, cannot be made upon the current incomplete record.

## CONCLUSION

For the foregoing reasons, Defendant Floyd Webb's 12(b)(6) Motion To Dismiss should be denied.

WILLIAM V. AGUIAR, III,

By his attorneys,

/s/ Heather B. Repicky
Ian D. Roffman (BBO# 637564)
Heather B. Repicky (BBO# 663347)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617)439-2000

Dated: July 3, 2008

## CERTIFICATE OF SERVICE

I certify that, on July 3, 2008, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants

/s/ Heather B. Repicky
Heather B. Repicky