1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3                                      No. 1:07-cv-11673-MLW

4

5
     WILLIAM V. AGUIAR, III,
6              Plaintiff

7
     vs.
8

9
     FLOYD WEBB, et al,
10             Defendants

11

12                          * * * * * * * *

13

14                        For Hearing Before:
                        Chief Judge Mark L. Wolf
15

16                         Motion Session

17
                        United States District Court
18                      District of Massachusetts (Boston)
                        One Courthouse Way
19                      Boston, Massachusetts 02210
                        May 9, 2008
20

21                          * * * * * * * *

22
                    REPORTER: RICHARD H. ROMANOW, RPR
23                       Official Court Reporter
                      United States District Court
24        One Courthouse Way, Room 5200, Boston, MA 02210
                      bulldog@richromanow.com
25

1                    A P P E A R A N C E S

2

3   IAN D. ROFFMAN, ESQ.
    HEATHER B. REPICKY, ESQ.
4       Nutter McClennen & Fish, LLP
        World Trade Center West
5       155 Seaport Boulevard
        Boston, Massachusetts 02210-2604
6       (617) 439-2421
        Email: Iroffman@nutter.com
7       For the plaintiff

8

    DAVID A. KLUFT, ESQ.
9   WALEAD ESMAIL, ESQ.
        Foley Hoag, LLP
10      155 Seaport Boulevard
        Seaport World Trade Center West
11      Boston, Massachusetts 02210
        (617) 832-3092
12      Email: Dkluft@foleyhoag.com
        For Floyd Webb

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          (Begins, 11:30 a.m.)

3          THE CLERK:  Civil Action 07-11673, William

4    Aguiar versus Floyd Webb.  The Court is in session.  You

5    may be seated.

6          THE COURT:  Good morning.  Would counsel

7    please identify themselves for the record.

8          MR. ROFFMAN:  Good morning, your Honor.  I'm

9    Ian Roffman with Heather Repicky, we're from Nutter

10   McClennen & Fish, and we're appearing on behalf of the

11   plaintiff, William Aguiar.  We filed an appearance in

12   this case probably about 45 minutes ago or so.

13         THE COURT:  I have it.

14         MR. KLUFT:  Your Honor, David Kluft for

15   defendant, Floyd Webb, and with me is Walead Esmail.

16         THE COURT:  All right.  Mr. Roffman and Miss

17   Repicky each appeared today.  Is Mr. Aguiar present?

18         MR. ROFFMAN:  Your Honor, yes, he is.  He's

19   right over here.

20         THE COURT:  And who is with him?

21         MR. ROFFMAN:  A family friend by the name of

22   Ray.

23         THE COURT:  Ray what?

24         MR. ROFFMAN:  I can't pronounce his last name.

25         MR. AGUIAR:  Your Honor, Ray Karnasiewicz.

1    THE COURT:  Would you spell that.

2    MR. KARNASIEWICZ:  K-A-R-N-A-S-I-E-W-I-C-Z.

3    THE COURT:  Okay.  Well, you may be seated.

4    On several occasions prior to today, Mr. Roffman,

5    as you probably know, I ordered Mr. Aguiar to let me

6    know whether he would be represented by counsel or

7    proceed Pro Se and I gather it's only very recently that

8    he obtained your services.  I do think this case, or

9    whatever of it survives today's proceedings, would

10   benefit from Mr. Aguiar being represented by counsel.  I

11   wonder if you have any familiarity, though, with the

12   criminal law and particularly the appropriate scope of

13   the assertion of Fifth Amendment rights, because I'm

14   going to be discussing that momentarily.

15   MR. ROFFMAN:  Your Honor, I do have some

16   familiarity with the Fifth Amendment, yes.  I am not a

17   criminal lawyer by training.  And as you point out --

18   and it's not to bring up an aside, Ms. Repicky and I

19   were brought into this case based on a referral from a

20   group called "Volunteer Lawyers for the Arts," which has

21   an interest in copyright protection, your Honor, and

22   we've come into this case just in a matter of days.  And

23   so we're not fully up to speed on everything that's

24   happened both procedurally and substantively to date.

25   And one of the things I would ask your Honor -- and I

1    don't mean to preempt your Honor's agenda, is that we at

2    least be given a short period of time to come up to

3    speed and to speak with defense counsel.  Perhaps we can

4    have some sort of agreement in terms of a process for

5    going forward.

6              THE COURT:  Well, we'll see because I've had

7    many hearings in this case.  But you can have a seat.

8    That's not where we're going right now.  You can have a

9    seat.

10             MR. ROFFMAN:  Okay.

11             THE COURT:  This is a civil case and I've, of

12   course, read the defendant's motion for a default

13   judgment and other sanctions.  It suggests to me that

14   there may be evidence of crimes committed by Mr. Aguiar

15   and others -- "Ray" is mentioned in the communications

16   that caused me to have the question.  And I feel an

17   obligation to describe the issue because it's possible

18   that things that Mr. Aguiar might say or some of his

19   colleagues might say could conceivably prove to be

20   information that Mr. Aguiar or they have a Fifth

21   Amendment right not to provide.

22        Mr. Roffman, I assume you've read the defendant's

23   motion.  It includes some statements placed on the

24   Internet, I believe, by somebody named John Creeden that

25   refers to "Ray."  Have you read that?

MR. ROFFMAN: I've seen that, yes, your Honor.

THE COURT: And 18 United States Code, Section 241, a provision of the criminal code, prohibits a conspiracy to violate a person's rights under the Constitution of the United States, and I would confidently expect including your right to access to the courts. It's a crime, a Federal crime punishable by up to 10 years in prison and a fine of $10,000 to threaten somebody for their participation in a lawsuit in Federal court. And some of the statements included in the -- with the defendant's motion, attributed to Mr. Creeden, and in the defendant's submissions linked to Mr. Aguiar, the mentioning, I think, "The allegedly dangerous Ray," could be evidence of a violation of that statute. It's also possible that 18 United States Code, Section 245(b)(1) is implicated.

And so I handle civil cases and I handle criminal cases and this is a civil case, but if the parties' conduct in this case appears to me to violate the Federal criminal law, it's my duty, and on the rare occasions when it occurs, my practice to refer the matter to the United States Attorney's Office. So I really feel an obligation to explain that. And some of the points raised by the defendant, which I intend to address today, at least hear argument on today, could

implicate Mr. Aguiar's Fifth Amendment rights.  So I
wanted to let you know that.

MR. ROFFMAN:  Thank you, your Honor.

THE COURT:  Then you are -- well, let me ask
the following and not presume that I know the answer.
Does Mr. -- and Mr. Roffman, understandably, and I'd say
foreseeably asked for some time to talk to counsel and I
do continue to think that this case might benefit
considerably from Mr. Aguiar being represented, but does
the defendant want me to provide a short number of days
for counsel for both parties to confer or do you want to
go ahead now on your motion for default judgment and
dismissal?

MR. KLUFT:  Your Honor, we do want to go ahead
now on our motion for default judgment and dismissal.
We're thrilled to have counsel involved, going forward,
on behalf of Mr. Aguiar, but we are where we are and we
feel, because of Mr. Aguiar's choices and because of the
harm being caused to Mr. Webb, that it's an appropriate
time to proceed on the motion.  We will certainly confer
with him anyway about where we are after today's
hearing.

THE COURT:  Well, I'm going to at least hear
you and, to the best of his ability, Mr. Roffman on
this.  It may -- I mean, I'll say the following.  The

1  defendant's motion, while setting forth certain factual

2  matters and citing some rules and cases, doesn't, from

3  my perspective, cite the most relevant provisions of the

4  Federal Rules of Civil Procedure, which are Rule 16(f)

5  and Rules 37(b)(2), (b), (c), and (D).  Rule 16(f)

6  provides for sanctions that are just for violation of

7  pretrial orders, and among those sanctions are those

8  enumerated in Rule 37(b)(2), (B), (C), and (D).

9  Although those are not the exclusive possible

10  sanctions.  Others might be just in the circumstances.

11      In addition, Rule 16(f) requires, in most

12  circumstances, the payment of a party who's violated

13  pretrial orders of the reasonable attorneys fees and

14  costs, although that would be excused if there was

15  substantial justification or if there was some other

16  reason it wasn't just to require that, but that's a

17  sanction expressly provided by Rule 16(f), in addition

18  to or in lieu of other sanctions.  So now --

19      And it might help, because Mr. Roffman and his

20  colleague are new to this case, for me to recite what I

21  think is part of the relevant chronology, but I say this

22  also so that the defendant can correct and amplify it,

23  if necessary.

24      But Mr. Webb initially filed his counterclaims

25  with his answer on October 9, 2007.  Under Rule

1    12(a)(2), Mr. Aguiar had 20 days to respond to the

2    counterclaims.  He did not make any response to the

3    counterclaims at that time.

4         I conducted a hearing on February 15, 2008 and I

5    issued some oral orders that were memorialized in a

6    later written order.  I ordered Mr. Aguiar to either

7    cause counsel to appear or file a statement that he

8    would continue Pro Se by February 29, 2008.  He didn't

9    meet that deadline.  He did file a statement on March 4,

10   2008 after repeated attempts by my docket clerk to

11   contact him and remind him to do so.

12        The February 15, 2008 order also required the

13   parties to file, preferably jointly, a proposed schedule

14   and statement regarding mediation by March 5, 2008.

15   Mr. Aguiar's statement that he would continue Pro Se,

16   filed on March 4, 2008, also stated that he would go to

17   mediation, but it contained no information about the

18   proposed schedule.  Although Mr. Webb stated, in his

19   timely-filed case management statement of March 5, 2008,

20   that his counsel had been unable to obtain Mr. Aguiar's

21   cooperation in preparing a statement.

22        On March 6, 2008, I issued a scheduling order

23   memorializing the schedule set at the scheduling

24   conference the same day.  Mr. Aguiar's amended complaint

25   and answer to counterclaim, as I said orally, were to be

filed by March 21, 2008.  This is reflected in the

docket entry.  However, I note that the actual order

that's on the docket, which was sent to Mr. Aguiar,

doesn't print correctly.  The date is missing.  However,

it seems clear to me, at the moment, that Mr. Aguiar

knew the deadline.  He was told at the scheduling

conference that the deadline was March 21.  He could

have called to confirm that if he was unsure.  And

indeed, he filed an amended complaint on March 24th, the

Monday after the Friday on which it was due.  However,

he did not file an answer to the counterclaims at all

until April 7th, over two weeks late.

On March 6th, I warned him that he must abide by

court orders and deadlines and that the consequences for

not doing so could be as severe as dismissal.  Up to

this point I think there were at least -- that is, up

until the belated response to the counterclaims filed on

April 7th, there were at least six times that Mr. Aguiar

failed to meet the Court's deadlines or to obey rules or

orders.  In addition, Mr. Aguiar's response to

Mr. Webb's motion for sanctions came 20 days after

Mr. Webb filed a motion.  That doesn't satisfy the

requirement of Local Rule 7.1(b)(2) that such a response

be filed within 14 days.

So that's my present understanding of the context

1    in which this motion arises.  Now, a Pro Se defendant's

2    pleadings are to be liberally construed, but he has to

3    obey orders, he has to comply with the substantive law.

4    The First Circuit has explained that in cases like

5    **Ahmed**, 118 F. 3rd 886 at 890.  My present sense is that

6    Mr. Aguiar, despite given on several occasions

7    opportunities and warnings, failed to timely respond to

8    the counterclaims.

9        Construing them liberally, he may be disputing

10   some of them, like the fair use claim.  He doesn't

11   address at all the trademark claims, which I believe

12   he's orally told me he wasn't maintaining anyway.  But

13   it's just to let you know my present state of mind, that

14   I'm inclined to dismiss the trademark claims, permit

15   relatively prompt amended answers to the other

16   counterclaims, and order Mr. Aguiar to pay the

17   defendant's reasonable attorneys fees relating to this

18   motion, unless he can demonstrate just cause why he

19   shouldn't pay some or all of them.

20       MR. KLUFT:  Thank you, your Honor.  I

21   generally agree with your statement of the facts, but we

22   have a few things to add for your consideration and a

23   few things to say about the relief.

24       First of all, I want to remind the Court that when

25   Mr. Aguiar filed this complaint, initially it was about

eight months ago, and right before that, he had counsel
involved with this case, Mr. John Francure, who was the
author of the cease and desist letters to the various
on-line Internet service providers, which really led up
to this case.  He chose to proceed, at that time,
without Mr. Francure.

I would also like to point out that in the eight
months that followed, Mr. Webb has suffered real harm
even though the injunction was not granted.  Not only
has his attention and limited resources -- he's an
independent artist, have been diverted away from the
expression of his First Amendment rights to the defense
of his First Amendment rights, but, in addition, he has
had real, tangible problems, because of the pendency of
this case, raising money and you have affidavits before
you that go to this point.  Every time I talk to my
client, I get another -- he tells me about another
person that said, you know, "We won't deal with you if
the case is ongoing."

Today, in fact, there's a fiscal sponsor in
Chicago, and for reasons outlined in the default motion,
I'm not going to say their name right now, and I'm happy
to tell the Court, because I just don't want them to be
bothered, but they're awaiting the outcome of this
hearing to decide whether to be his fiscal sponsor so

1    they can then apply for a State of Illinois Art Council

2    grant.  And all of this harm is in addition to the

3    harassment on-line and the other things.

4         In effect, even though the injunction wasn't

5    granted, Mr. Aguiar has achieved a lot of what he set

6    out to achieve, which is to harm Mr. Aguiar's ability to

7    --

8              THE COURT:  Mr. Webb's.

9              MR. KLUFT:  I'm sorry.  Thank you, your

10   Honor.  -- Mr. Webb's ability to make the film.  And to

11   -- as he has stated in open court, to try to control the

12   story, which may be tangentially related to his father.

13        I also want to point out, your Honor, with regard

14   to the sanctions you mentioned, that it, in part to try

15   to move this matter along faster in our own client's

16   interest and in part in reliance on Mr. Aguiar's

17   repeated statements twice that he's going to proceed

18   without counsel, Mr. Webb and his counsel have proceeded

19   to follow the Court's orders and the rules of procedure

20   in their filings, they have filed not only a motion, but

21   the answer, case management statements, you know, local

22   Rule 26 automatic disclosures.  We've expended a lot of

23   time and wasted a month really since the last case

24   management conference in addition to the motion for

25   default.

1      Your Honor, if I were in Mr. Roffman's position, I
2   would be making the same type of request, and I do want
3   to work with him from this point going forward, but we
4   are where we are because of Mr. Aguiar's choices.  And I
5   would hope that the Court would still consider an
6   outright dismissal with prejudice of the case pursuant
7   to our motion.  And I understand there's a predilection
8   for some kind of procedure on the merits and --
9           THE COURT:  Well, there is a preference for
10  decisions on the merits and, with regard to the
11  counterclaims other than the trademark counterclaim,
12  which is, I think, is not addressed at all, while
13  Mr. Aguiar evidently just took your responses and tried
14  to convert them, that liberally construing them, I'm
15  inclined to believe, you know, that he's denying,
16  there's a fair use defense, and there's a third issue --
17  and I do have to liberally construe them.  And my
18  inclination, if I come out this way, would be not to
19  dismiss those counterclaims, but -- and I'll give
20  Mr. Roffman a relatively brief period of time to respond
21  to the counterclaims, maybe amend the complaint again,
22  and to come up with a schedule.
23      Because I've met with the parties.  I'm not going
24  to sit down with Mr. Aguiar in the back again.  I see
25  mischaracterizations on the Internet of what was

discussed. I didn't consider that a proceeding closed

to the public. I wanted an informal session to try to

understand what this is about better and ideally

mediate, which strikes me, at least absent the

assistance of counsel, is hopeless. One of the things

Mr. Aguiar needs is somebody to explain the law to him

because my perception is that his -- some of his

positions are based on misunderstandings of the law.

But this has -- you know, one of the things I have been

educated to understand is that the mere pendency of this

case is injurious to Mr. Webb's interests and efforts to

make his film and therefore it really does need to

proceed with all deliberate speed.

Would you like to be heard on the motion with

regard to the sanctions?

MR. ROFFMAN: Your Honor, I'm actually sort of

of two minds. I'm not sure I do want to be heard

specifically on their motion because we've just come

into the case late and I -- recently, and I would ask

your Honor to not rule specifically on their motion.

But I would like to address the substance of your

Honor's comments and Mr. Kluft's comments.

With respect to any potential injury to the

defendant, um, that, in my mind, is -- I think "injury"

is the wrong word. Because if a filmmaker is

1    intentionally infringing upon legitimate copyrights,

2    then it certainly is the appropriate functioning of the

3    market for people who are potentially going to finance

4    that operation to want those legal rights sorted out.

5              THE COURT:  And, actually, I think even

6    Mr. Webb agrees and I agree.  It's something, though,

7    that gives some urgency to this case going forward in an

8    informed way.  It shouldn't linger for a long time.  If

9    Mr. Aguiar's rights are being violated, his First

10   Amendment rights, that should stop as soon as reasonably

11   possible.  If Mr. Aguiar's rights aren't being violated,

12   the Court should issue a decision that makes that clear

13   so Mr. Webb's First Amendment rights are not, in effect,

14   chilled by the -- improperly chilled by the pendency of

15   the case.

16             MR. ROFFMAN:  Your Honor, I couldn't agree

17   more.  And one of the things that we would like to do is

18   really get to the heart of the substance and to the

19   merits and, first of all, see if there's a way to work

20   things out and if not, have the right to adjudicate it.

21   And I don't think this is that complex a matter that

22   that can't be done under a relatively quick time frame.

23        We've come in, as you know, just within the last

24   couple of days and so I'm not in a position to discuss

25   the procedural problems that have happened in the case

1    to date.  Now, obviously, as attorneys, we all have an

2    interest in preserving the Court's rules and the Court's

3    time frame.  I would just ask your Honor to be -- to

4    consider that Mr. Aguiar's -- and I know you have been

5    considering it, has been operating Pro Se and is not

6    familiar with the rules and --

7          THE COURT:  Well, it doesn't really take a

8    lawyer to cause somebody to understand that if he's

9    given a deadline for answering the counterclaims, he

10    doesn't have the right to answer them two weeks late.

11    And, you know, the first time this came up, there was no

12    answer.  That's why I went through the chronology.  And

13    then I issued orders and unless my docket clerk hounded

14    Mr. Aguiar, he didn't file anything.  And the last time

15    I was here, I spelled it out.  I said, "If you don't

16    make the filings on time, the case might get dismissed."

17          MR. ROFFMAN:  Your Honor, I don't dispute any

18    of that and I'm not -- and I'm asking you to excuse

19    deadlines that have been missed.  I do know, from having

20    spoken with Mr. Aguiar, yesterday and today, that he's

21    been really trying in good faith to keep up with this

22    system, which is very unfamiliar to him.  And I hope now

23    that we've filed an appearance, going forward, we

24    obviously will keep with all of the Court's deadlines

25    and we will be able to explain to him and do ourselves

1  what we need to do both on the procedural side of the

2  law and the substantive side of the law.

3      In terms of the specific sanctions that your Honor

4  is considering, with respect to dismissing potential

5  trademark claims, if your Honor wants to do that, I

6  would ask that it be made explicit that that dismissal

7  is without prejudice, because he does have certain

8  trademark rights and those rights -- and I've seen, from

9  meeting with him, may potentially be being infringed by

10  others who are unrelated to this lawsuit as well and I

11  wouldn't want to see those other rights, as a collateral

12  consequence of the procedural errors in this case, be in

13  any way dismissed.

14      THE COURT:  Well, "with prejudice" would only

15  be with prejudice with regard to Mr. Webb.  Do you think

16  you may assert that Mr. Webb is violating possible

17  trademark rights of Mr. Aguiar?

18      MR. ROFFMAN:  Your Honor, at this point I do

19  not expect to make such a claim, however, I haven't had

20  the time to do the work to figure it out.

21      THE COURT:  Okay.

22      MR. ROFFMAN:  And then secondly, with respect

23  to the financial sanction of attorneys fees, um, I

24  haven't seen Mr. Aguiar's financial statements.  My

25  suspicion is that there may be a financial difficulty in

1    complying with that.

2           THE COURT:  Well, the way the rule operates, I

3    would provide the defendant an opportunity to make an

4    application for the reasonable attorneys fees relating

5    to this motion, that's 16(f).  I'd give you a chance to

6    respond.  Your response could have two dimensions,

7    "That's an unreasonable amount for this matter" or, you

8    know, "There are circumstances that make an award of

9    expenses unjust," and you would cite cases, if there are

10   cases, saying, "Well, the Court should consider ability

11   to pay," and then the defendant would reply.  And,

12   indeed, you know, we could talk about what the

13   appropriate amount is.  I have no evidence telling me

14   whether or not Mr. Aguiar has the capacity to pay.

15   Certainly he seems to have the time to devote to this

16   case, but I don't know what his financial circumstances

17   are.

18           MR. ROFFMAN:  Your Honor, I apologize.  I had

19   misunderstood.  I had thought you were considering

20   entering the order today.  But we would --

21           THE COURT:  I would enter the order, but the

22   amount would have to be briefed, or you could confer on

23   it, maybe you can agree on some amount in the

24   circumstances.  But it would have to be briefed.  And I

25   would give you a chance to respond and the amount

 1   wouldn't be determined today.

 2          MR. ROFFMAN:  I appreciate that.  We would

 3   obviously be willing and able to brief that matter, your

 4   Honor.

 5      And, I guess, lastly in terms of really sort of

 6   cutting to the chase in terms of the schedule, I would

 7   ask your Honor, assuming that your Honor --

 8          THE COURT:  Well, I think I'm actually going

 9   to get to that in a minute.

10          MR. ROFFMAN:  Okay.

11          THE COURT:  But I'm going to rule on the

12   motion for default or sanctions.  It's hereby allowed to

13   the following extent.

14      On March 6th, 2008, I orally ordered Mr. Aguiar,

15   who was present, to respond to -- to file an amended

16   complaint and respond to the counterclaims by March 21,

17   2008.  This was in the context of the previous failure

18   to respond to the counterclaims and the other failures

19   to obey scheduling.  Mr. Aguiar filed an amended

20   complaint three days late.  He did not file the response

21   to the counterclaims until April 7th, 2008, more than

22   two weeks late.  I had warned Mr. Aguiar that the

23   failure to meet the deadlines or to seek relief from

24   them would -- could result in sanctions as drastic as

25   dismissal.

1    So I find that Mr. Aguiar failed to obey that

2    March 8th scheduling order, particularly -- that March

3    6th scheduling order particularly by not filing any

4    answer to the counterclaims until April 7th, 2008 and

5    therefore sanctions under Rule 16(f), which must be

6    just, are appropriate.

7    The answer to the counterclaim doesn't address the

8    trademark claims at all.  And I don't recall whether it

9    was on the record or in the lobby, but Mr. Aguiar, at

10   least before he had counsel, told me or led me to

11   understand that he wasn't asserting that Mr. Webb

12   violated any trademark claims.  So I am, as a sanction,

13   authorized, when just, by Rule 37(2)(b), hereby

14   dismissing -- I'm basically granting the motion for

15   declaratory judgment on the trademark claims.  However,

16   I'm doing that without prejudice.  If there's an amended

17   complaint that asserts trademark claims submitted by

18   counsel on a schedule that we'll develop, it will have

19   to be accompanied by a memorandum addressing why I

20   should permit the trademark claims to be reintroduced to

21   the case.  That is, addressing why they have potential

22   merit, reminding me, although I won't forget that

23   there's a preference for resolving claims on the merits,

24   and why the failure, the repeated failure, including the

25   most recent failure to obey court orders, isn't an

1   appropriate sanction.  And you must confer with

2   defendant's counsel to see if they're going to oppose

3   that.  Perhaps they will or perhaps they won't.

4        With regard to the other counterclaims -- although

5   Mr. Aguiar didn't do what I expected him to, which is,

6   in a layman's way, tell me his position, liberally

7   construed, his belated counterclaim informs that the

8   defendant did meet, that he denies their right to

9   relief, um, and so I'll treat those as contested,

10  although I am going to require a new response to the

11  counterclaims filed by counsel.

12       However, Rule 16(f) provides that when there's

13  a -- when a party or attorney fails to obey a scheduling

14  order, as has occurred here, a Court may make such

15  orders as are just.  It specifically provides:  "In lieu

16  of or in addition to any other sanction, the judge shall

17  require the party to pay the reasonable expenses

18  incurred because of any noncompliance with this rule,

19  including attorneys fees, unless the judge finds that

20  the noncompliance was substantially justified or that

21  other circumstances make an award of expenses unjust."

22  In the circumstances of this case, Mr. Aguiar's failure

23  to timely file an answer to the counterclaim was not

24  substantially justified.  I'll take up the issue of

25  whether there's something that makes an award or a

1   fuller award not just in the circumstances in response

2   to the defendant's submission for costs and attorneys

3   fees.

4         (Pause.)

5         THE COURT:  Mr. Kluft, is there any problem in

6   making that submission in a week?  You would have to

7   file by May 16th an affidavit with time records showing

8   what you would charge Mr. Webb, in these circumstances,

9   or maybe not charging Mr. Webb.

10         MR. KLUFT:  I have no problem making that,

11   your Honor.

12         THE COURT:  By May 16th.  And, generally

13   speaking, you understand fee applications.  Just say

14   "This is our fee."  You know, "This is reasonable in

15   this community."  You know, "This is the number of hours

16   we put in.  This is reasonable.  So we're seeking under

17   16(f) the following."  And the two of you should confer

18   before you file that.  I don't want you to run up more

19   expenses.  If Mr. Roffman can provide you information

20   that Mr. Aguiar really doesn't have the means to pay

21   that amount and you agree on some lesser amount, then

22   fine.

23     Mr. Roffman, you are to respond by May 23rd.  And

24   if any reply is required, it's to be filed by May 30th.

25     All right.  Mr. Roffman, do you want to file an

1  amended complaint and an amended response to the

2  counterclaim?

3           MR. ROFFMAN:  Yes, your Honor, I think the

4  case would benefit from an amended complaint and amended

5  answer to the counterclaim.

6           THE COURT:  And is two weeks sufficient for

7  that?

8           MR. ROFFMAN:  Yes, your Honor.

9           THE COURT:  Okay.  That shall be filed by May

10 23rd.  A response shall be filed by June 6th.

11     And by June the 6th, you're to have conferred and

12 come up jointly, if possible, individually, if

13 necessary, with a proposed schedule for the case, to

14 proceed as quickly as possible.  And we'll have a

15 further conference at 3:00 on June 12th.

16           MR. ROFFMAN:  Your Honor, one clarification

17 question, please.  When we file our amended complaint on

18 May 23rd, would you like us, at that point then, to file

19 our reply to the current counterclaim?

20           THE COURT:  Yes.

21           MR. ROFFMAN:  Okay.  So then their answer to

22 the amended --

23           THE COURT:  I'm sorry.  The reply -- I'm

24 sorry.  You mean the answer to the counterclaim?

25           MR. ROFFMAN:  Yes.  There's another term under

1    Rule 8 and I just can't remember what it is.

2          THE COURT:  You've got to respond to the

3    counterclaim.

4          MR. ROFFMAN:  So, I guess, to ask that

5    question more clearly, we're going to file an amended

6    complaint and, at the same time, file the answer to the

7    counterclaim that currently exists?

8          THE COURT:  Yes.

9          MR. ROFFMAN:  Okay.  And then after that we'll

10    get a new answer on June 6th from the defendant on the

11    amended complaint that we filed?

12          THE COURT:  Right.

13          MR. ROFFMAN:  Okay.  Thank you.

14          THE COURT:  Is there anything else from the

15    parties' perspective for today?

16          MR. ROFFMAN:  Not from us, your Honor.  Thank

17    you.

18          MR. KLUFT:  Not from us either, your Honor.

19          THE COURT:  Okay.  Well, Mr. Roffman, you're

20    familiar somewhat with the Fifth Amendment, but you say

21    you're not a criminal lawyer.  I think in your firm

22    there are lawyers like Mr. Ullmann who have substantial

23    experience with the criminal law.  I don't know how

24    these people interested in martial arts ordinarily

25    communicate on the Internet, but if there's something

that can properly be perceived as threatening harm to

somebody for litigating something in Federal court,

threats like that could result in people who participate

in making them serving up to 10 years in prison,

probably for each threat.  So it may be that among the

services you want to provide Mr. Aguiar is some advice

on what is protected First Amendment activity with

regard to this case and what might expose him to

criminal prosecution and potential imprisonment.

        MR. ROFFMAN:  Your Honor, thank you.  I will

look into that with all due haste.

        THE COURT:  Anything else?  The Court is in

recess.

        (Ends, 12:15 p.m.)

C E R T I F I C A T E

I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do hereby certify that the foregoing record is a true and accurate transcription of my stenographic notes, before Chief Judge Mark L. Wolf, on May 9, 2008, to the best of my skill and ability.

/s/ Richard H. Romanow
_____
RICHARD H. ROMANOW